[No. 1456.]

## BOARD OF COUNTY COMMISSIONERS OF WASHOE COUNTY, ACTING FOR THE USE AND BENEFIT OF THE INHABITANTS OF THE TOWN OF RENO, APPELLANT, *v.* A. W. GRISWOLD, RESPONDENT.

TOWNS—INCORPORATED AND UNINCORPORATED—LICENSE TAX.—The act entitled "An act providing for the government of the cities and towns in this state" (Stats. 1881, p. 68) and the act amendatory thereof (Stats. 1889, p. 43) apply only to unincorporated towns, and the fact that the proviso introduced by the amendment is in terms confined to that class of towns, does not make any part of the act applicable to any other class of towns.

APPEAL from the District Court of the State of Nevada, Washoe county; *A. E. Cheney*, District Judge:

Action by the Board of Commissioners of Washoe county, for the use and benefit of the inhabitants of the town of Reno, against A. W. Griswold, to recover a license tax on his business of expressman. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

The facts sufficiently appear in the opinion.

*F. H. Norcross*, District Attorney, for Appellant:

I.   There can be no question that, after the act of March 5, 1887 (Stats. 1887, p. 117), the board of county commissioners of Washoe county had the power and authority to levy a license tax upon defendant's business in the town of Reno. Had not the ninth subdivision of section 1 of the act of February 26, 1881 (Stats. 1881, p. 68), been amended as it was by the act of February 25, 1889 (Stats. 1889, p. 45), there would still be no question of the right of the board of county commissioners of Washoe county to make or enforce a license tax upon defendant's occupation in the town of Reno.

II.   The section was amended by inserting in the ninth subdivision the following: "*Provided*, that in all unincorporated cities and towns in this state the board of county commissioners shall have power to fix and collect a tax upon the following places of business and amusements, as follows, to wit: circus, caravan," etc., respondent's occupation not being included in the amendment.

III.   Towns and cities in this state are either incorporated

or unincorporated, and a disincorporated town or city is not different from an unincorporated town or city so far as its status under the laws of this state is concerned. (Sections 1 and 8, art. VIII, of State Constitution; *City of Virginia* v. *Chollar-Potosi M. Co.*, 2 Nev. 86; *State* v. *Rosenstock*, 11 Nev. 128.)

IV. The ninth subdivision of section 1, as well as the entire act of February 26, 1881, applied to unincorporated towns only. It could never have been the intention of the legislature that the provisions of the ninth subdivision of section 1 of the act in question should apply to other than unincorporated towns and cities, for all incorporated towns and cities had a similar provision in their special acts of incorporation. This view of the case is supported by the provisions of sections 1 and 8 of article VIII of the constitution; the circumstances surrounding the passage of the act (it being concurrent with the passage of the acts repealing the acts incorporating Virginia, Gold Hill and Austin); the subsequent acts of the legislature of 1887 (Stats. 1887, p. 51, 117); the provisions of all the special acts of incorporation; also, the rule of statutory construction that, when the language admits of two constructions, one of which would render it constitutional and valid, and the other unconstitutional and void, that construction should be adopted which will save it. (*V. & T. R. R. Co.* v. *Henry*, 8 Nev. 165.)

V. The ninth subdivision of section 1 of the general act of February 26, 1881, together with the proviso contained in the amendatory act of February 25, 1889 (Stats. 1889, p. 45), being re-enacted or passed at the same time, no portion has precedence over any other in point of time, and one portion, because of its later enactment, cannot be said to repeal the other. But it is claimed that the provision inserted in the ninth subdivision prohibits the boards of county commissioners from levying or collecting a license tax in unincorporated towns and cities upon any place of business and amusement other than those enumerated in the proviso inserted by the amendment. If this is true, then the other portion of the ninth subdivision, if it has any force at all, must refer to incorporated towns and cities, which, prior to the amendment, referred to unincorporated towns. This

view must be taken, or else the legislature intended the former portion of the ninth subdivision to apply to disincorporated cities. But either way it would amount to special legislation in an act that must be general,

. VI. A careful consideration of the entire act, the circumstances of its passage, its evident object, and the effect which a literal translation of the word " unincorporated " will have upon the operation of that part of the act relating to the fixing and collecting of licenses, will force the conclusion that the legislature fell into a very common error of using the word " unincorporated " or " incorporated " out of the proper meaning.

VII. It is very probable that the legislature did not intend the word " unincorporated," in the act of February 25, 1889, to be used in its strict and proper sense; that it intended the proviso inserted in the ninth subdivision of section 1, referring to " unincorporated " towns and cities, to refer to those towns that were not governed either by special acts or had not availed themselves of the provisions of the general act. If this view is correct, then the proviso in question does not apply to the town of Reno.

*Goodwin & Dodge* and *Thomas E. Haydon*, for Respondent:

I. 'The powers of the board of commissioners of a county were expressly limited by the proviso in the ninth clause of section 1 of an act to amend an act entitled "An act providing for the government of the towns and cities of this state," approved February 26, 1881, approved February 25, 1889, which proviso is found on page 45 of acts of 1889.

II. Defendant's job or express wagon does not come within the class of occupations that can be required to pay a license under the proviso, so the complaint against him does not state and cannot be made to state any cause of action.

By the Court, BELKNAP, J.:

Plaintiff sued defendant to recover the amount of a license tax upon his business of draying or expressing in the town of Reno, imposed by an ordinance alleged to have been made under the provisions of an act entitled "An act providing for the government of cities and towns in this state" (Stats. 1881,

p. 68), and the act amendatory thereof (Stats. 1889, p. 43). Defendant, answering, set up several defenses.

Thereafter the cause was certified by the justice's court, in which it originated, to the district court, upon the ground that a question touching the legality of a tax was involved. Upon the trial the district court found as a conclusion of law that the board of commissioners had no authority to enact the ordinance, and rendered its judgment dismissing the action. Plaintiff appeals.

If the conclusion found by the district court is correct, the judgment must be affirmed irrespective of other defenses which have been interposed.

The powers of the county commissioners as defined in the ninth subdivision of section 1 of the above-mentioned act are as follows (the amendment of 1889 being included in brackets):

" Ninth—To fix and collect a license tax upon and regulate all places of business and amusement so licensed, as follows, to wit: Artisans, artists, assayers, auctioneers, bakers, bankers, barbers, billiard tables, boiler makers, boot and shoe makers, bowling alleys, brokers, factors and general agents, commission merchants, circus, caravan or menagerie, concerts and other exhibitions, dance houses, saloons or cellars, express and freight companies, foundries, gaming, hawkers and peddlers, hay yards, wagon yards and corrals, hotels, boarding houses and lodging houses, illuminating gas, electric light, insurance agents, job wagons, carts and drays, laundries, livery and sale stables, lumber yards, manufacturing of liquors and other beverages, manufacturers of soap, soda, borax or glue, markets, merchants and traders, newspaper publishers, pawnbrokers, restaurants and refreshment saloons, bar-rooms, shooting galleries, skating rinks, solicitors, drummers, mercantile agents, stage and omnibuses, stock brokers, telegraph companies, theaters and melodeons, undertakers, wood and coal dealers, having due regard to the amount of business done by each firm or person so licensed; to license, tax and regulate, prohibit and suppress all tippling houses, dram shops, public card tables, raffles, hawkers, peddlers and pawnbrokers, gambling houses, disorderly houses and houses of ill-fame; [*provided,* that in all unincorporated

cities and towns in this state the boards of county commissioners shall have power to fix and collect a tax upon the following places of business and amusements, and none other, as follows, to wit: circus, caravan or menagerie, concerts, theatrical performances, melodeons and other exhibitions, dance houses, wholesale liquor merchants, brewers, manufacturers of liquors and beer, saloons, bars, bar-rooms or cellars, gaming and gambling houses, hawkers and peddlers, junk shops, pawnbrokers, auctioneers, solicitors, drummers and mercantile agents]; to levy and collect an annual tax on all dogs owned or kept within the limits of said town or city, and to provide for the extermination of all dogs for which tax shall not have been paid, and to prohibit the keeping of hogs or the running at large of goats, cows or other animals within the limits of said town or city; to fix and collect a license tax upon all professions, trades or business within said town or city not heretofore specified."

There have been two general systems for the government of towns adopted by the legislature. One was by separate charter incorporating the inhabitants of a designated locality and authorizing the election of their own officers to administer local affairs. The other was by general law empowering the boards of county commissioners of the county under specified conditions to assume the management of the affairs and business of any town in their county.

At the session of 1879 the legislature provided a system of town government entitling the act "An act for the government of unincorporated towns in the state." Without stating its details it is sufficient to say that it did not materially differ from the system that had been established by the legislature in regularly chartered municipalities, except that the law did not provide for the incorporation of the towns, and the officers were not selected by their own citizens independently of the officials of the county.

This was followed by the act of 1881. (Stats. 1881, p. 68.) In it the same general plan was adopted as in the act of 1879. No incorporation was provided for and it extended its provisions to the towns that had been disincorporated.

This legislation shows that by the term "unincorporated towns" in the amendment was meant such towns as had not

been specially incorporated by separate charter.   The entire
act is intended to apply only to unincorporated towns, and
the fact that the proviso introduced by the amendment is in
terms confined to that class of towns does not make any part
of the act applicable to any other class of towns.

The proviso being the only change in the section as it
originally stood, it is clear that this was the sole purpose of
the amendment, and that by it the legislature intended to
restrict the previously unlimited powers of the commissioners
in the collection of licenses, to the kinds of business enumer-
ated in the clause added to the section.

As the defendant's business of draying or expressing is
not enumerated in this clause, the commissioners had no
authority to impose a license tax thereon, and the judgment
of the district court must be, and hereby is, affirmed.